**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. # 025492010
69 Grove Street
Somerville, NJ 08876
PH: (908) 704-9200
FAX: (908) 704-9291
CELL: (908) 432-4098
poreda@poredalaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAYA DEUSKAR, | Docket No. |
| *Plaintiff*, | |
| vs. | |
| | Civil Action |
| RIDER UNIVERISITY, TOM JOHNSON, CHRIS BOTTI, EMMA DANIELS, ELISABETH PODSIADLO, ANDREW LESLIE COOPER, RACHEL FELDMAN, JOHANNA OLSON, | |
| *Defendants.* | **COMPLAINT** |

Daya Deuskar, Plaintiff, states the following:

## JURISDICTION AND VENUE

1) This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the laws of the United States.

2) This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3) Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey.

## THE PARTIES

4)   Plaintiff Daya Deuskar is an individual residing in New Jersey, whose date of birth is October 2, 1993.  Plaintiff was a graduate student and Graduate Assistant at Westminster Choir College, a division of Rider University, from September 2016 until May 2018.

5)   Plaintiff is a South Asian-American asexual transgender woman who had the legal name Dinesh Manohar Gurpur until March 25, 2019.  Plaintiff will be referred to as "she" and "her" in this Complaint.

6)   Defendant Rider University is an entity located at 2083 Lawrenceville Road, Lawrenceville, NJ 08648 and 101 Walnut Lane, Princeton, NJ 08540.

7)   Defendant Tom Johnson is an individual employed by Rider University as its Title IX Officer.

8)   Defendant Chris Botti is an individual employed by Rider University as the Associate Dean of Students for Westminster Choir College.

9)   Defendant Emma Daniels is a former graduate student and Graduate Assistant at Westminster Choir College.  On information and belief, she is a resident of Illinois.

10)  Defendant Elisabeth Podsiadlo is a  current undergraduate student at Westminster Choir College.  On information and belief, she is a legal resident of California, and temporarily resides in New Jersey.

11)  Defendant Andrew Leslie Cooper is a former graduate student and Graduate Assistant at Westminster Choir College.  On information and belief, he is a resident of the United Kingdom.

12)  Defendant Rachel Feldman is a former graduate student and Graduate Assistant at Westminster Choir College.  On information and belief, she is a resident of Connecticut.

13)  Defendant Johanna Olson is a former graduate student and Graduate Assistant at Westminster Choir College.  On information and belief, she is a resident of Washington.

## FACTUAL BACKGROUND

### Introduction

14)  Plaintiff is a recovering alcoholic who has been sober since December 2017.

15)  Plaintiff also suffers from the disabilities of alcoholism, major depression, generalized anxiety disorder, post-traumatic stress disorder, attention deficit-hyperactivity disorder, gender dysphoria, a sleep disorder, and an idiopathic neurological disorder that affects the right side of her body.

2

16)     In May 2016, Plaintiff earned a Bachelor of Music from the University of Georgia.

17)     In August 2016, Plaintiff enrolled at the Westminster Choir College of Rider University. Specifically, Plaintiff enrolled in a two-year Master of Music in choral conducting program.

18)     At this time, and at all times relevant to the Complaint, Plaintiff was presenting as a male under her birth name Dinesh Manohar Gurpur.

19)     Plaintiff was one of six students in her cohort for the Master of Music in choral conducting program.

20)     Plaintiff was at all times during her tenure as a student at Rider University also an employee of Rider University. At Rider University, Plaintiff was employed as a Graduate Assistant.

21)     Until early May 2018, Plaintiff was an A student who intended to graduate in late May 2018 with her Master of Music in choral conducting. Plaintiff also planned to apply for and obtain a master degree in voice pedagogy, which would have only required several additional classes in addition to her work for the master of choral conducting.

22)     After obtaining her degrees, Plaintiff intended to embark on a career in choral higher education, possibly after earning a Ph.D.

23)     Due to the discriminatory and tortious acts of Defendants, Plaintiff never obtained her Master of Music.

24)     Due to the discriminatory and tortious acts of Defendants, Plaintiff suffered extreme stress, humiliation, and depression, which forced her to come out as transgender and transition to female years before she had intended. The transition caused her economic damages, which she would not have incurred had she been able to transition at a future date.

25)     All of the acts described herein occurred while Plaintiff was a student and employee at Rider University.

### *The Student Defendants*

26)     Plaintiff and Defendant Andrew Leslie Cooper were in the same cohort in the choral conducting program and were also roommates at Rider University.

27)     Defendant Elisabeth Podsiadlo was an undergraduate student at Westminster Choir College while Plaintiff was a graduate student.

28)   Plaintiff met Defendant Emma Daniels in January 2017, when Daniels auditioned for the masters program in choral conducting.  Defendant Daniels shared a Graduate Assistant work space with Plaintiff.

29)   Defendants Rachel Feldman and Johanna Olson were the roommates of Emma Daniels and were also graduate students at Westminster Choir College.

30)   Plaintiff and Podsiadlo became friends during Plaintiff's first academic year.   The friendship soured in the Fall Semester of 2017 as Podsiadlo developed romantic and sexual desire for Plaintiff, which Plaintiff could not return.  Although Podsiadlo assumed that Plaintiff was a gay man who could not return affection to her, Podsiadlo nevertheless took the rejection poorly and caused Plaintiff intense stress and guilt about her asexuality and gender dysphoria with vindictive actions.

31)   These vindictive actions included: non-consentually telling Plaintiff details of her sadomasochistic sexual encounters with men, non-consentually masturbating in front of Plaintiff during a Facetime call, spreading rumors among the student body that Plaintiff was a gay male, making negative comments to Plaintiff during choir practice, like "You're going to fail," and "Why are you looking at my ass?"

32)   Plaintiff informed her choir directors of Podsiadlo's sexual harassment, but Plaintiff was nevertheless required to continue to participate in choral activities with Podsiadlo, who used the contact with Plaintiff to continue the sexual harassment.

33)   Also in the Fall of 2017, Plaintiff began to have tension with Andrew Leslie Cooper. Plaintiff expressed disapproval of Cooper's cheating on coursework, his use of alcohol and his authority as a Graduate Assistant to groom underage, undergraduate women into sexual relationships, his treatment of women generally, and his lying to superiors about colleagues in order to better his own opportunities.

34)   In October 2017, Cooper went to Podsiadlo's on-campus residence to watch a film with a bottle of wine.  Cooper's intent was to solicit sex from Podsiadlo.  After being rejected and asked to leave, he later attempted to loudly brag to housemates, to within earshot of the Plaintiff. He made a thinly veiled rape joke, remarking "love is complicated" and "sometimes 'no,' really means 'yes.'"

35)   Later in the month, Cooper stole a knife out of Plaintiff's desk in her home office and refused to give it back or put it away as Plaintiff requested.  Cooper stared at Plaintiff, making twisting motions to indicate a violent threat that Plaintiff should stop interrogating his inappropriate behaviors.  This also caused Plaintiff intense distress.

36)   Also in the Fall Semester of 2017, Emma Daniels began making unwanted romantic overtures to Plaintiff.  These included a September 23, 2017 attempt to kiss Plaintiff.

37)   Plaintiff did not return Daniels's romantic sentiments, which frustrated Daniels. Daniels also appeared to develop extreme jealousy over Plaintiff's perceived relationship with

4

Podsiadlo. In retaliation, Daniels falsely reported to college officials in November or December 2017 that Plaintiff was dangerous and predatory. Plaintiff did not learn of these defamatory statements until the end of the 2017-18 school year.

### *Plaintiff's Alcoholism*

38)     As a result of the stresses caused by Podsiadlo, Cooper, and Daniels, Plaintiff began to drink heavily in the Fall of 2017.

39)     On a particularly stressful day in December 2017, Plaintiff took a mixture of prescription anti-anxiety drugs, Tylenol, and alcohol, which caused her to black out.  After re-awakening, she experienced neurological symptoms such as imbalance, weakness, numbness, and muscle spasms on the right side of her body.  She suspected she had a seizure, but was too ashamed to seek medical attention for over a month. The symptoms continue to this day.

40)     In January 2018, Plaintiff was scheduled to go on a two-week tour of the Midwest with the Westminster Choir.

41)     The tour was to be directed by Joe Miller, the Director of Choral Activities.

42)     On or about December 17, 2017, Plaintiff told Joe Miller about her alcoholism, her blackout and suspected seizure, and her intention to self-detox during the upcoming tour.

43)     Plaintiff successfully performed the entire two-week tour.

### *Complaint to Chris Botti*

44)     After returning from the Tour, tensions with Cooper and Daniels heated up again.

45)     Cooper planned to host a party at his and Plaintiff's house on Superbowl Sunday 2018.

46)     Cooper planned to serve alcohol at the party.

47)     Plaintiff asked Cooper not to invite undergraduates, particularly not Elisabeth Podsiadlo. Plaintiff feared interaction with Podsiadlo would threaten her sobriety, especially with alcohol around.  Plaintiff also feared for Podsiadlo's safety because Podsiadlo was known to come to parties on Xanax and then drink alcohol.

48)     Cooper invited undergraduates, including Podsiadlo.

49)     On February 12, 2018, Plaintiff went to the office of Associate Dean of Students, Chris Botti, to complain about Cooper's threatening her with a knife, his cheating, his sexual harassment of undergraduates, his treatment of women generally, his serving alcohol to

underage students, his threatening of Plaintiff's sobriety, and the particular threat he posed to Elisabeth Podsiadlo by serving her alcohol.

50)   Plaintiff was hoping for some kind of intervention, particularly where the violent threat with a knife was concerned.

51)   Rider took no action.

52)   Botti told Plaintiff not to tell Joe Miller, the police, or anyone else about Cooper's misconduct.

### *Emma Daniels's Retaliatory Complaint*

53)   In the Spring 2018 Semester, the sexual harassment by Daniels commenced again.

54)   Daniels would place her leg on top of Plaintiff's so that Plaintiff could not move her leg.

55)   Daniels would stare down Plaintiff during rehearsals and concerts.

56)   Daniels became belligerently drunk at the Plaintiff's house, after having driven there, and made several attempts to sleep over even after being asked to leave with her housemates.

57)   In April 2018, after Plaintiff made it clear on numerous occasions that the sexual advances were unwelcome, Daniels went to Joe Miller and told him that Plaintiff was dangerous and a predator.  She told the same thing to her housemates, Rachel Feldman and Johanna Olson.

58)   In retaliation for Plaintiff's rejection of her sexual advances, Daniels also began spreading rumors among students that Plaintiff was dangerous and a predator.

59)   In retaliation for Plaintiff's rejection of her sexual advances, Daniels filed a false complaint with Rider Public Safety stating that Plaintiff was dangerous and a predator.

60)   On Monday, April 23, 2018, Plaintiff filed a written complaint about Daniels's smear campaign to Rider Public Safety, the Title IX Officer, and the Office of Student Conduct.

61)   On April 24, 2018, Plaintiff reached out by email to Tom Johnson, Title IX Officer, and Chris Botti regarding Daniels's sexual harassment and retaliatory smear campaign.

62)   The Office of Public Safety issued a no contact order between Daniels and Plaintiff, but the other offices and officials took no action. In spite of the order, Daniels continued to stalk the Plaintiff, appearing outside her house on no less than two occasions and staring down the Plaintiff through her window from across the street.

63)   On or about April 26, 2019, Plaintiff was taken by Rider Public Safety to Princeton Hospital for suicidal ideations and then transferred to Carrier Clinic.

64) The suicidal ideations were the result of the humiliation and stress suffered due to the acts of Daniels.

65) Plaintiff was diagnosed at Carrier Clinic with acute suicidal ideation, major depression, generalized anxiety disorder, ADHD, and a sleep disorder.

66) Plaintiff was released from Carrier Clinic on May 1, 2018.

### *Rider University's Failure to Accommodate Plaintiff's Disability*

67) On or about May 4, 2018, Rider University officials told Plaintiff that if she continued to advocate for herself as victim of sexual, racial, and/or ableist harassment they would bar Plaintiff from campus and from enrollment.

68) Because Daniels was in Plaintiff's music theory class, Plaintiff was not able to finish the course due to overwhelming PTSD symptoms.

69) Up until this point, Plaintiff had received perfect scores on all her music theory assignments.

70) Plaintiff requested that the administration make an accommodation to help her finish the courses without attending a class with Daniels.

71) Rider administration told her to work an accommodation out on her own with her music theory professor.

72) At this point, Plaintiff was suffering from as-yet undiagnosed PTSD and needed more time to finish the music theory assignments than the professor gave her.

73) Plaintiff told Marjorie Klein, Academic Coordinator, that she needed more time to complete the music theory assignments.

74) Rider provided no accommodation, and it considered no accommodation.

### *Spoleto Festival Contract*

75) In the summer of 2018, the Westminster Choir had a residency at the Spoleto Festival, a music festival in Charleston, South Carolina.

76) For summer 2018, the Spoleto Festival contracted with Plaintiff to be an Artist in Residence.

77) The contract was worth $2,900 plus a travel stipend of $200.

78)     Joe Miller was also contracted by the Spoleto Festival for the Summer 2019 Residency, and he had a supervisory role over Plaintiff.

79)     Emma Daniels was also hired by the Spoleto Festival for Summer 2019 and was assigned the role of Residential Assistant, in which capacity, she had authority over Plaintiff's housing and schedule.

80)     When Emma Daniels made her false and defaming complaints about Plaintiff to Joe Miller in April 2018, Miller immediately and unilaterally terminated Plaintiff's Artist in Residence contract without so much as consulting with Plaintiff.

### *Criminal Mischief of Student Defendants*

81)     Shortly after the termination of the Spoleto Festival Contract, Plaintiff suffered a mysterious theft, a vandalism, and an anonymous defamation.

82)     Between July 1, 2018 and July 25, 2018, Andrew Leslie Cooper, Emma Daniels, Elisabeth Podsiadlo, Johanna Olson, and Rachel Feldman, conspired to and/or stole five of Plaintiff's personal checks and her social security card.

83)     On August 27, 2018 Andrew Leslie Cooper, Emma Daniels, Elisabeth Podsiadlo, Johanna Olson, and Rachel Feldman conspired to and used one of the checks to make a $250 donation to Planned Parenthood.  After overdraft fees, the theft cost Plaintiff $288.

84)     The incident was reported to and investigated by the Princeton Police.

85)     On or about July 31, 2018 Andrew Leslie Cooper, Emma Daniels, Elisabeth Podsiadlo, Johanna Olson, and Rachel Feldman conspired to and/or poured a foreign substance into the tank of Plaintiff's car, resulting in approximately $1,200 of immediate damage. The car was later totaled due to engine failure in March 2019.

86)     The incident was reported to the Princeton Police.

87)     In or about September 2018, Andrew Leslie Cooper, Emma Daniels, Elisabeth Podsiadlo, Johanna Olson, and Rachel Feldman conspired to and/or wrote a typed letter to The Thirteen, a choir where Plaintiff was an intern, in which the writer(s) told The Thirteen that Plaintiff was a sexual predator.

88)     The Thirteen is an independent professional choir in Washington DC, artistically directed by Matthew Robertson.

*Consequences of the Defendants' Actions*

89)     Having been wrongfully accused of being a violent sexual predator, Plaintiff was humiliated into transitioning genders and coming out about her orientation sooner than she had wished.

90)     The need to transition and come out quickly was two-fold.  First, Plaintiff felt the need to vindicate herself by publicly demonstrating why she was  neither violent nor a sexual predator.  Plaintiff knew that transitioning genders and affirming her asexuality would send a signal to the community that she was not the male sexual predator that Daniels had accused her of being.  Second, Plaintiff was constantly struggling with the stress of gender dysphoria.  Defendants' actions increased Plaintiff's overall stress level so high that she fell into suicidal depression.  In order to alleviate the suicidal depression, she needed to alleviate the only stressor over which she had some control: the gender dysphoria.  She was able to alleviate this stressor by transitioning.

91)     But the transition came with high economic costs.

92)     Plaintiff's present and potential earnings have been diminished by the fact that she is now in a stigmatized group.

93)     For example, Plaintiff was fired from a job at a church due to her transition. She also lost several private clients as a contractor for private music lessons.

94)     The losses caused by being in a stigmatized group has been compounded by the fact that she had to enter this group before building a professional reputation.

95)     Due to the transition, Plaintiff's wealthy grandfather in India also re-wrote his will in order to disinherit Plaintiff.

96)     The majority Plaintiff's other extended and immediate family also disowned her due to the transition.

## COUNT 1
## New Jersey Law Against Discrimination ("NJLAD") – Hostile Educational & Work Environment Sexual Harassment – against Rider University

97)     The NJLAD forbids Rider from discriminating on the basis of sex.

98)     Discrimination on the basis of sex includes hostile educational and work environment sexual harassment.

99)     Rider subjected Plaintiff to a hostile educational and work environment based on Elisabeth Podsiadlo's and Emma Daniels's sexual harassment of Plaintiff.

100) Despite Rider University being on notice of the sexual harassment of both Podsiadlo and Daniels, the University took no steps to ensure that Plaintiff was able to complete her coursework and Graduate Assistant work in an atmosphere free of sexual harassment.

101) By failing to remediate the hostile educational and work environment caused by Podsiadlo and Daniels, Rider University violated the New Jersey Law Against Discrimination's ban on tolerating hostile educational and work environments.

102) When, on May 4, 2018, Rider University officials told Plaintiff that if she continued to advocate for herself as a victim of sexual harassment that they would bar Plaintiff from campus and from enrollment, the University became liable for perpetuating hostile educational and work environment sexual harassment.

103) By allowing Emma Daniels to continue attending Plaintiff's music theory class, in spite of a no contact order, Rider University ratified Daniels's sexual harassment and created a hostile educational environment.

104) Due to this violation of the NJLAD, Plaintiff has lost the value of her investment in her education, lost current and future earnings, incurred medical expenses, and suffered emotional damages.

### COUNT 2
### NJLAD – Disparate Treatment Sex Discrimination – against Rider University

105) When Daniels and Plaintiff filed conflicting public safety reports, Rider chose to believe Daniels's story without so much as investigating either.

106) Rider's siding with Daniels is evident from its decision to terminate Plaintiff from the Spoleto Festival without so much as consulting with Plaintiff.

107) Rider's siding with Daniels is evident from its decision not to remove Daniels from Plaintiff's music theory class, in spite of the fact that only Plaintiff suffered severe emotional distress resulting from their relationship.

108) Rider chose to believe Daniels's version of the story solely based upon the fact that Daniels was cis-gender female and Plaintiff was presenting as male.

### COUNT 3
### Title IX Liability against Rider University

109) Title IX of the Education Amendments Act of 1972 states that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

110)   Rider University is subject to the requirements of Title IX.

111)   Title IX liability attaches where a University fails to remediate sexual harassment.

112)   By tolerating Emma Daniels's sexual harassment and failing to give Plaintiff a chance to complete her coursework without having to interact with her harasser, Rider violated Title IX and is liable to Plaintiff for resulting damages.

113)   Due to this violation of Title IX, Plaintiff has lost the value of her investment in her education, lost current and future earnings, incurred medical expenses, and suffered emotional damages.

## COUNT 4
## NJLAD –Failure to Accommodate Disability Discrimination – against Rider University

114)   The NJLAD requires Rider University to make reasonable accommodations for disabled people.

115)   Plaintiff's major depression, generalized anxiety disorder, alcoholism, gender dysphoria, ADHD, sleep disorder, and idiopathic neurological disorder qualify Plaintiff as a disabled person under the LAD.

116)   Plaintiff requested a reasonable accommodation for the completion of her music theory course requirement because Plaintiff's disability compromised Plaintiff's ability to attend the class with the presence of Emma Daniels.

117)   Rider failed to provide Plaintiff with a reasonable accommodation.

118)   Due to this violation of the NJLAD, Plaintiff has lost the value of her investment in her education, lost current and future earnings, incurred medical expenses, and suffered emotional damages.

## COUNT 5
## NJLAD – Hostile Work & Educational Environment Disability Discrimination – against Rider University

119) Plaintiff approached Chris Botti in February 2018 seeking help because Andrew Leslie Cooper was threatening her sobriety and creating a work and educational environment that was so hostile to her alcoholism that no reasonable person would be able to stand it.

120) In refusing to take any action and telling Plaintiff not to report Cooper's activities to anyone else, Botti acquiesced to the hostile work and educational of Plaintiff, in violation of the NJLAD.

121) When, on May 4, 2018, Rider University officials told Plaintiff that she would be barred from campus and enrollment if she continued to advocate for herself as a victim of ableist harassment, Rider University became liable for a hostile work and educational environment.

## COUNT 6
## NJLAD – Race Discrimination against Daniels and Rider University

122) Daniels's defamatory reports that Plaintiff was "dangerous" and "a predator" were motivated by the fact that Plaintiff was presenting as a bearded man of South Asian descent and was stereotyped by Daniels as an Islamic terrorist.

123) This racist motivation for the false and defamatory reports violates the NJ LAD.

124) Due to the fact that Rider University was Daniels's employer, it must answer *respondeat superior* for the racist discrimination of Daniels.

## COUNT 7
## Aiding and Abetting Discrimination against Daniels, Botti, Johnson

125) By failing to respond to Plaintiff's February 2018 plea for help to protect her sobriety, Chris Botti aided and abetted Rider's illegal disability discrimination.

126) By failing to respond to Plaintiff's April 24, 2018 request for help with Daniels's retaliatory sexual harassment, Chris Botti aided and abetted Rider's illegal discrimination.

127) By failing to respond to Plaintiff's April 24, 2019 request for help with Daniels's retaliatory sexual harassment, Tom Johnson aided and abetted Rider's illegal discrimination.

128) As the perpetrator of sexual harassment, and as an employee of Rider University, Emma Daniels aided and abetted Rider University's illegal discrimination.

## COUNT 8
## New Jersey Conscientious Employees Protection Act ("CEPA")

129)   Plaintiff was an employee of Rider University.

130)   Plaintiff complained to Chris Botti about her co-worker's creating a terroristic threat towards her.

131)   Botti retaliated against Plaintiff for her complaint of Cooper's illegal activity by failing to take any action.

132)   By failing to take action, Botti ratified the hostile work environment.

133)   The tolerated hostile work environment constitutes a tangible work action in violation of CEPA.

## COUNT 9
## Tortious Interference with Contract against Rider University and Emma Daniels

134)   Emma Daniels tortiously interfered with Plaintiff's 2018 contract to be an Artist-in-Residence at Spoleto Festival in her capacity as a Graduate Assistant and in her capacity as a graduate student.

135)   Daniels committed this tortious interference by deliberately telling Joe Miller that Plaintiff was a dangerous sexual predator, which Daniels knew was not true.

136)   At all times, Joe Miller was an agent of Rider University.

137)   Joe Miller tortiously interfered with Plaintiff's 2018 contract to be an Artist-in-Residence at Spoleto Festival in his capacity as Westminster Choir College's Director of Choral Activities.

138)   Joe Miller committed this tortious interference by unilaterally telling the Spoleto Festival that Plaintiff could not participate in the Residency Program.

139)   Rider University is liable for the tortious conduct of its agents, Joe Miller and Emma Daniels, done in the course of their employment as Westminster Choir College's Director of Choral Activities and Graduate Assistant, respectively.

140)   As a result of Miller's and Daniel's tortious interference, Plaintiff lost employment worth $3,100 plus the value of professional performance credits.

## COUNT 10
## Defamation against Emma Daniels and Rider University

141) By falsely telling Rider University students and staff that Plaintiff was dangerous and a sexual predator, Daniels defamed Plaintiff.

142) Daniels's defamation resulted in loss of the contract with the Spoleto Festival, as well as the loss of performance credit.

143) Daniels's defamation caused Plaintiff so much stress that she had to undergo a psychiatric hospitalization.

144) Daniels's defamation humiliated Plaintiff.

145) Daniels's defamation caused Plaintiff to transition gender and come out about her orientation for two reasons. First, Plaintiff felt compelled to transition and affirm her asexuality in order to prove that she was neither violent nor the male sexual predator that Daniels had made Plaintiff out to be in Daniels's defamatory comments. Second, Plaintiff was constantly dealing with the stress of gender dysphoria, and the additional stress of Daniels's humiliation and economic loss rendered Plaintiff suicidally depressed. In order to relieve the dangerous quantum of stress, Plaintiff addressed the one stressor she had some control over: her gender dysphoria. She relieved the gender dysphoria by coming out as transgender and transitioning.

146) Plaintiff's defamation made the music theory class that Plaintiff needed to graduate impossible to attend, complete work for, or pursue an alternative course on campus. As a result, Plaintiff did not receive her degree and has suffered lost earnings and decreased earning potential as a result.

147) Plaintiff's transition has made her part of a stigmatized group. This stigmatization has resulted in economic losses including the loss of a church job.

148) Being in a stigmatized group leaves Plaintiff with reduced earning capacity.

149) Stigmatized by her family, Plaintiff was written out of her grandfather's will and disowned by the overwhelmingly majority of her extended and immediate family.

150) Daniels defamed Plaintiff in Daniels's capacity as a Rider employee; therefore, Rider University is liable via the theory of respondeat superior.

<u>**COUNT 11**</u>
<u>**Intentional Infliction of Emotional Distress against Emma Daniels and Rider University**</u>

151)   By falsely telling Rider University students and staff that Plaintiff was dangerous and a sexual predator, Daniels engaged in extreme and outrageous behavior.

152)   Daniels's extreme and outrageous conduct caused Plaintiff extreme emotional distress and economic damages.

153)   Daniels's extreme and outrageous conduct resulted in loss of the contract with the Spoleto Festival, and the loss of performance credit.

154)   Daniels's extreme and outrageous conduct caused Plaintiff so much stress that she had to undergo a psychiatric hospitalization and continued outpatient treatment.

155)   Daniels's extreme and outrageous conduct humiliated Plaintiff.

156)   Daniels's extreme and outrageous conduct caused Plaintiff to transition gender and come out about her orientation for two reasons.  First, Plaintiff felt compelled to transition and affirm her asexuality in order to prove that she was neither violent nor the male sexual predator that Daniels had made Plaintiff out to be in Daniels's defamatory comments. Second, Plaintiff was constantly dealing with the stress of gender dysphoria, and the additional stress of Daniels's humiliation and economic loss rendered Plaintiff suicidally depressed.  In order to relieve the dangerous quantum of stress, Plaintiff addressed the one stressor she had some control over: her gender dysphoria.  She relieved the gender dysphoria by coming out as transgender and transitioning.

157)   Plaintiff's extreme and outrageous conduct made the music theory class that Plaintiff needed to graduate impossible to attend, complete work for, or pursue an alternative course on campus.  As a result, Plaintiff did not receive her degree and has suffered lost earnings and decreased earning potential as a result.

158)   Plaintiff's transition has made her part of a stigmatized group.  The stigmatization has resulted in economic losses including the loss of a church job.

159)   Being in a stigmatized group leaves Plaintiff with reduced earning capacity.

160)   Stigmatized by her family, Plaintiff was written out of her grandfather's will and disowned by the overwhelming majority of her extended and immediate family.

161)   Daniels committed intentional infliction of emotional distress against Plaintiff in Daniels's capacity as a Rider employee; therefore, Rider University is liable via the theory of respondeat superior.

**COUNT 12**
**Trespass against Student Defendants**

162) Emma Daniels, Elisabeth Podsiadlo, Andrew Leslie Cooper, Rachel Feldman, and/or Johanna Olson poured a foreign substance into the gas tank of Plaintiff's car, resulting in economic damages.

**COUNT 13**
**Appropriation against Student Defendants**

163) Emma Daniels, Elisabeth Podsiadlo, Andrew Leslie Cooper, Rachel Feldman, and/or Johanna Olson stole 5 of Plaintiff's checks and her social security card and used a check to make an unauthorized donation to Planned Parenthood in the amount of $250, which after overdraft fees, cost Plaintiff $288.

**COUNT 14**
**Defamation against Student Defendants**

164) Emma Daniels, Elisabeth Podsiadlo, Andrew Leslie Cooper, Rachel Feldman, and/or Johanna Olson wrote a defamatory note to The Thirteen, stating that Plaintiff was a sexual predator.

165) This letter caused Plaintiff economic, emotional, and reputational damage.

**COUNT 15**
**Conspiracy Against Student Defendants**

166) Emma Daniels, Elisabeth Podsiadlo, Andrew Leslie Cooper, Rachel Feldman, and/or Johanna Olson agreed to the trespass of Plaintiff's car, the appropriation of her checks, and the drafting and sending of the defamatory letter to The Thirteen.

167) In furtherance of this conspiracy, each of the Student Defendants took steps to assist with the execution of the trespass of Plaintiff's car, the appropriation of her checks, and the drafting and sending of the defamatory letter to The Thirteen.

**COUNT 16**
**Intentional Infliction of Emotional Distress Against Andrew Leslie Cooper**

168) Andrew Leslie Cooper's insinuation of raping Podsiadlo and use of a knife to threaten Plaintiff was extreme and outrageous conduct which caused Plaintiff severe emotional damages.

## **REQUEST FOR RELIEF**

Based on the foregoing facts, Plaintiff demands judgment against Defendants and asks that this court grant Plaintiff:

- Economic Damages

- Incidental and Consequential Damages

- Injunctive Relief

- Punitive Damages

- Emotional Damages

- Attorneys Fees

- Court Fees and Costs

- Other Relief as the Court Deems Just and Proper

## **JURY DEMAND**

Plaintiff hereby requests a jury in accordance with the Rules of Court.

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*

Date: October 16, 2019

## **NOTICE OF TRIAL COUNSEL**

**PLEASE TAKE NOTICE** that Michael Poreda, Esq. is hereby designated as Trial Counsel in the above-captioned matter.

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*

Date: October 16, 2019

## CERTIFICATION OF NO OTHER ACTION

Pursuant to Rule 4:5-1, it is hereby certified that to the best of my knowledge and belief, there are no other pending actions or proceedings involving the matter in controversy, none are contemplated, and I do not presently know the identity of any other party who should be joined.

_____
Michael Poreda, Esq.
*Attorney for Plaintiff*

Date: October 16, 2019