

JAMES R. WRONKO
JAMES V. LOEWEN
MARCO M. BENUCCI

KEVIN P. HEWITT, JR.•
MICHAEL POREDA ♦

• Member of MI Bar
♦ Member of NY Bar

OF COUNSEL
GILBERT G. MILLER

website: www.newjerseylawyer.org
main email: WLB@newjerseylawyer.org

69 GROVE STREET
SOMERVILLE, NJ 08876
TEL: (908) 704-9200
FAX: (908) 704-9291

1130 U.S 202, SUITE A/7
RARITAN, NJ 08869
TEL: (908) 393-6445
FAX: (908 393-6447

**Please reply to Somerville**

February 18, 2020

**VIA ECF**
The Honorable Freda L. Wolfson
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Building and U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

**Re: Deuskar v Rider University, et al**
Docket No. 3:19-cv-19031-FLW-TJB

Dear Judge Wolfson:

I represent Plaintiff in this case. Please accept this letter as Plaintiff's Opposition to the Motions to Dismiss filed by Defendants Emma Daniels and Elisabeth Podsiadlo.

## I. THE EXTRINSIC MATERIAL SUBMITTED BY THE DEFENDANTS SHOULD NOT BE CONSIDERED BY THE COURT ON THIS MOTION TO DISMISS

The Defendants' arguments rely heavily upon the introduction of extrinsic material which cannot be considered on a Rule 12(b)(6) motion to dismiss. "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider *only* the

allegations contained in the pleading to determine its sufficiency." *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 290 (3d Cir. 2014) (emphasis added) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). A district court's reliance on facts alleged outside of Plaintiff's complaint constitutes a procedural error under Rule 12(b)(6). *In re Asbestos Prod. Liab. Litig. (No. VI)*, 822 F.3d 125, 133–34 (3d Cir. 2016).

There is a narrow exception to this rule for documents which are 1.) indisputably authentic and 2.) integral to or explicitly relied upon in the complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). *See also* 61A Am. Jur. 2d Pleading § 529 ("A court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

The key question in the "indisputably authentic" part of the test is whether Plaintiff is "on notice of the contents of the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Actual notice is key because "the need for a chance to refute evidence is greatly diminished" when Plaintiff is on notice of the contents of the documents. *Id.* *See also* 61A Am. Jur. 2d Pleading § 529 ("For a document to be considered . . . on a motion to dismiss for failure to state a claim, a plaintiff must have had . . . actual notice of the extraneous information.").

Documents which meet the "integral to or explicitly relied upon" part of the test are those that "form the basis of a claim." *Holiday Vill. E. Home Owners Ass'n, Inc. v. QBE INS Corp.*, 830 F. Supp. 2d 24, 26 (D.N.J. 2011) (citing *Lum v. Bank of America*, 361 F.3d 217, 221 n. 3 (3d

Cir. 2004)). Typically, such "integral" documents are contracts or agreements that have been breached in some way.

In their recently submitted Reply Brief, the Rider Defendants argued that the court may accept the extrinsic document if only one of the two requirements, integrality *or* indisputable authenticity, are met. This is *not* true. The test requires *both.* In making their point about the rule, the Rider Defendants rely solely upon an improvidently-worded footnote from a case where the use of extrinsic evidence in a motion to dismiss was not even a relevant issue.

A more authoritative explanation of the rule appears in *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The below passage explains why *both* indisputable authenticity *and* integrality are necessary and why none of the documents submitted by any of the Defendants qualify:

> As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro,* 764 F.2d at 944. However, an exception to the general rule is that a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *Shaw,* 82 F.3d at 1220 (emphasis added); *see also Trump,* 7 F.3d at 368 n. 9 ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss **if** the plaintiff's claims are based on the document.") (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3rd Cir.1993)). [**emphasis added**]. The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint." *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2nd Cir.1991)); *see also San Leandro,* 75 F.3d at 808–09. What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent. *See Shaw,* 82 F.3d at 1220. As best we can tell, plaintiffs are correct that the Complaint does not *explicitly* refer to or cite BCF's 1994 Annual Report. But the language in both *Trump* and *Shaw* makes clear that what is critical is whether the claims in the complaint are "based" on an extrinsic document and not merely whether the extrinsic document was explicitly cited. *See Trump,* 7 F.3d at 368 n. 9; *Shaw,* 82

> F.3d at 1220. Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.

Some of the Defendants' documents meet one part of the test or the other; but none of them meet both. For example, Emma Daniels's letter to Rider Public Safety was not a document Plaintiff has ever seen before and is therefore not one of which Plaintiff had notice. Plaintiff could not have attached it to the Complaint because Plaintiff had no access to it. Text messages and poems introduced in this motion may be documents of which Plaintiff had notice, but none of Plaintiff's claims "are based on" the text messages. *Id.*

## II. DANIELS CAN BE LIABLE FOR AIDING AND ABETTING DISCRIMINATION

The LAD provides that "employers" are liable for acts of employment discrimination, and defines with specificity who is an employer for this purpose. *See N.J.S.A.* 10:5–12(a). In addition, however, the LAD also includes a prohibition that goes beyond employers and provides that "[i]t shall be … unlawful discrimination … [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under the LAD]…." *N.J.S.A.* 10:5–12(e). *Cicchetti v. Morris Cnty. Sheriff's Office,* 194 N.J. 563, 591 (2008). The fact that Daniels was not a supervisor plainly does not exculpate her from liability under the LAD.

## III. PLAINTIFF HAS STATED A CLAIM FOR TORTIOUS INTERFERENCE WITH A CONTRACT AGAINST DANIELS

Daniels's defense to this count of the Complaint relies almost exclusively upon extrinsic material of which the Plaintiff was not put on notice. Daniels tries to prove that the interference with Plaintiff's contract was not intentional or malicious by relying upon a report of which Plaintiff was not on notice. It must therefore be excluded

Moreover, the fact that Daniels didn't have direct communication with Spoleto Festival does not absolve her of liability. The elements of the cause of action do not require the that the defendant have direct communication with the contractor. The elements are (1) the existence of a contract; (2) interference which was intentional and with malice; (3) the loss of the contract as a result of the interference; and (4) damages. *Velop, Inc. v. Kaplan*, 301 N.J. Super. 321 (App. Div. 1997). By intentionally and maliciously reporting a false story about Plaintiff to Joe Miller, she was able to have Plaintiff removed from her participation with Rider University's residency with the Spoleto Festival, resulting in damages. The fact that Joe Miller was the head of that residency and that Daniels was the Resident Assistant leads to the plausible inference that her very purpose in telling Joe Miller these lies was to have Plaintiff removed from her position with Rider University's Spoleto Festival residency. Plaintiff has therefore stated a claim against Daniels for tortious interference with a contract.

## IV. THE DEFAMATION CLAIMS ARE OPEN-ENDED

The Complaint alleges, in a temporally open-ended manner, "By falsely telling Rider University students and staff that Plaintiff was dangerous and a predator, Daniels defamed Plaintiff." (Complaint at ¶ 141). Because we do not know when or if Daniels ever stopped repeating the defamatory comments about Plaintiff to other students, the date that the statute of limitations starts to accrue is unknown. The statute of limitations defense can only be raised upon a motion for summary judgment, after Plaintiff has had the opportunity to collect evidence of the last defamatory statement that Daniels made.

## V. THE FACTS ALLEGED SUPPORT AN INFERENCE OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Defendants' defense to the allegation of intentional infliction of emotional distress also resorts to the extrinsic evidence of Daniels's letter to Rider Public Safety, of which Plaintiff was not on notice.

Secondly, the defense argues that Plaintiff's failure to specifically state that the conduct was "intentional" or "reckless" renders the allegations implausible under *Ashcroft v. Iqbal.* Defense counsel surely knows well that no magic words are required for meeting the plausibility standard. *Ashcroft v. Iqbal* states that "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The element of intentionality can be inferred from the allegation that Daniels made false statements that publicly stigmatized and humiliated Plaintiff so severely that Plaintiff had a psychological breakdown. Through discovery, Plaintiff will be able to prove her allegations that Daniels both intended the act and intended to produce the emotional distress.

## VI. THE COMPLAINT STATES A CLAIM FOR TRESSPASS

The Complaint states facts from which it can be plausibly inferred that Daniels was the person who poured a foreign substance into the gas tank of Plaintiff's car. Daniels was one of a group of students who had all expressed animosity towards Plaintiff. Daniels, in particular, "continued to stalk the Plaintiff," after the issuance of the no contact order, "appearing outside [Plaintiff's] house on no less than two occasions and staring down the Plaintiff through her window from across the street." (Complaint at ¶ 62). This allegation demonstrates that Daniels

knew where Plaintiff kept her car and was undeterred by the no contact order from seeking Plaintiff out, plausibly in part, so that she could damage Plaintiff's gas tank.

### VII. PLAINTIFF HAS STATED A CLAIM AGAINST DEFENADANTS FOR THE TORT OF STEALING HER CHECK

The appropriation of property is also called the tort of conversion. The tort is pled with plausible allegations that the defendant intentionally exercised dominion or control over plaintiff's property. *Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 454 (App. Div. 2009). Plaintiff's allegation that Daniels or Podsiadlo, or both of them, stole Plaintiff's checks and social security card are plausible by virtue of the fact that the Plaintiff and Defendants were in close contact with each other at work, at Plaintiff's home, and at school. Both of them had vindictive vendettas against Plaintiff, and the Complaint's allegations support a reasonable inference that they retaliated against Plaintiff by going into Plaintiff's personal belongings, taking the checks, and writing out a donation to Planned Parenthood.

### VIII. PLAINTIFF STATES A CLAIM FOR CONSPIRACY

A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means a principal element of which is to inflict a wrong against or injury upon another, together with an act that results in damage. *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 614 (App. Div. 2003). Plaintiff has plainly alleged that "Emma Daniels, Elisabeth Podsiadlo, Andrew Leslie Cooper, Rachel Feldman, and/or Johanna Olson ***agreed*** to the trespass of Plaintiff's car, the appropriation of her checks, and the drafting and sending of the defamatory letter to The Thirteen." (Complaint at ¶ 166). This agreement demonstrates that they were acting "in concert." That their agreement was to vandalize Plaintiff's car, steal her checks, and defame her to an employer demonstrates an intent to commit unlawful acts with the intent to inflict injury on Plaintiff. Plaintiff has specified that

these acts caused her car repair fees, the amount of the Planned Parenthood donation, and reputational damage.

Defendants propose that Plaintiff must plead the conspiracy with specificity, complaining that "Plaintiff has not asserted any . . . particularized facts. She has not asserted any alleged agreement among the student defendants[1], when or where the agreement was planned, the unlawful purpose behind the alleged conspiracy[2], how the student defendants allegedly carried out their plans, or the role each student defendant allegedly played in carrying out the conspiracy." The law does not demand particularized details about where, when, and how the conspiracy was executed. The only elements required are the plausible allegations of an agreement, an unlawful purpose, and an injury. All of these elements have been plausibly pled.

Respectfully Submitted,

______________________________

MICHAEL POREDA, ESQ.

[1] This defense is contradicted by the Complaint at ¶ 166.
[2] This defense is also contradicted by the allegations of theft, vandalism, and defamation in the Complaint at ¶ 166.